Dickman, J.
In March, 1848, Hannah Eouisa Wade leased for the term of ninety-nine years, and renewable forever, unto John James Burnett, a parcel of land situated in the city of Cincinnati, Ohio. The lease, among other covenants, contained the following: “The party of the first part covenants and agrees with the party of the second part, that upon the payment to her, her heirs or assigns, by the party of the second part, his heirs and assigns, of the sum of eight hundred dollars, in addition to all rents that have accrued up to the time of such payment, the party of the first part, her heirs or assigns, shall and will, at the charges in the law of the party of the second part, his heirs and assigns, convey and assure the inheritance or fee-simple of the hereby demised premises unto the party of the second part, his heirs or assigns, or to the heirs or assigns of him or them, who shall have and hold the same free and acquit of rent thenceforth forever.”
All the interest of Burnett in the leasehold, thereafter, by proper assignments, became vested in Henry Eoewenstein and Herman Eoewenstein, two of the defendants in error.
*354 Hannah Eouisa Wade, in the year 1854, married Thomas E. Townsend, and resided with him thereafter in the state of New York, until the year 1861, when she died intestate, leaving surviving her Thomas E. Townsend, her husband, and Edward W. Townsend, her only child and issue. Edward W. Townsend died unmarried and intestate, in the year 1872, and Thomas E. Townsend died in 1884. -Both father and son lived and died residents of the state of New York. Samuel W. Smith, Jr., plaintiff in error, was duly appointed administrator of Hannah Eouisa Townsend, deceased, and Eucy E. Townsend, one of the defendants in error, was appointed administratrix of Thomas E. Townsend, deceased.
Henry Eowenstein and Herman Eowenstein, desirous of exercising the option of purchase granted in the lease, and being in doubt as to who was entitled to receive the purchase money, and empowered to make to them the proper conveyance of the premises, filed their petition, in April 1886, in the court of common pleas of Hamilton county, making the administrator of the lessor and of her husband, and the heirs at law of the son, and others, parties defendant. They asked in their petition, that the defendants be required to set up their respective rights, and offered to pay the purchase money into court, or to the parties whom the court might find entitled to receive the same; and asked that the court compel such parties, upon payment to them of eight hundred dollars and all rents then due on the premises, to execute to the plaintiffs such proper conveyance; and further, that all the defendants be perpetually enjoined from setting up any claim to the premises. No claim was made upon the fund arising from the purchase money and accrued rents, for the payment of any debts of the lessor.
The cause was heard in the court of common pleas, and taken by appeal to the circuit court. The circuit court rendered a final decree, finding, that upon the death of Hannah Eouisa Townsend, the leased premises were inherited by Edward W. Townsend, her son; that upon the death of the son, his heirs became the owners of the fee-simple of the premises, under the statute of descent of the state of Ohio, *355 subject to the lease and to the estate by the curtesy of Thomas E. Townsend; and upon the death of the latter, became the sole owners thereof, subject only to the lease, with all the rights reserved in the lease, including the right to the rents and the purchase money; that the heirs at law of Edward W. Townsend were entitled to receive the whole of the sum paid to the clerk of the court as purchase money and accrued rents; and that the claim of the other defendants to receive any or all of such money and rents, by reason of any conversion in equity of the lessor’s interest into personalty, or for any other reason, was not well taken.
To reverse the judgment of the circuit court, Samuel W. Smith, Jr., administrator, and Eucy E. Townsend, administratrix, have respectively filed their petition and cross-petition in this court. The only question which we need consider is, whether as between the heirs at law of Edward W. Townsend, as the real representative of his mother, the lessor, on one side, and the administrator of the lessor and of her husband, on the other, the fund arising from the purchase money of the demised premises should go to the heirs or the personal representatives. It is contended in behalf of the plaintiff in error, that by virtue of the equitable doctrine of constructive conversion, the option to purchase at a future time granted in the lease converted the real estate into personalty; that the exercise of the lessee’s option after the death of the .lessor was retrospective in .its operation, and converted the realty into personalty as of the time of making the lease; while it is urged on the other side, that the lessor’s estate was not thus converted until the declaration of the option, at which time, the lessor’s estate had become vested in the heirs at law.
The doctrine now most in accord with the general course of authority and principle is, that as between lessor and lessee, with the privilege to the latter to purchase, the conversion will be deemed to have taken place at the time of declaring the option, and not from the date of the contract giving the option. Such was the holding in Edwards v. West, L. R., 7 Ch., Div. 858, where under the terms of a lease the landlord covenanted to insure, and the tenant had *356 the option to purchase for a fixed sum. Before the time for exercising the option the buildings demised were burned, and the landlord received the insurance money. The tenant then exercised his option to purchase, and claimed the insurance money as part of his purchase, on the ground that the option to purchase, when exercised, related back to the time of the contract giving the option, since which, it was argued, the property had been partially converted into personalty by the fire and the receipt of the insurance money, and that the purchaser was entitled to it in that shape. It was held, that conversion, according to general principles, cannot relate back to an earlier date than that of the contract constituted by the exercise of the option; that as between the vendor and the purchaser themselves, the conversion did not and could not take place until the purchaser declared his option.
Until the option to purchase was exercised by the defendants in error, Eoewensteins, by the payment of the purchase money, there was only an incomplete contract; it was executory in its nature; there was no agreement capable of being specifically enforced by the lessor, nor could the lessee, without declaring the option and making the required payment, compel a conveyance of the premises in fee-simple. For aught that appeared, the privilege of purchase acquired by the lease might never be exercised.
After the death of the lessor, the demised premises descended to Edward W. Townsend, the son and heir-at-law, and became vested in him as an estate of inheritance. Clothed with the legal estate and the freehold title, he was entitled to receive the rents and profits, and had the right to enter for condition broken, and all other rights of the owner in fee, subject to those of the tenant.
It was subsequent to the death of the lessor, and after the estate had thus vested in the heir, that the Eoewensteins exercised the option of purchase, and called for a conveyanee of the premises. In our judgment, it was at that time that there was a conversion of the real estate into personalty, and we see no good reason why the doctrine of relation back to the date of the lease should be applied, for the pur *357 pose of divesting the heirs who held the freehold title when the option was declared, and handing over the purchase money to the personal representatives. The descent to the heir was in the legal channel which the statute had marked out; and after executing the lease, the lessor did nothing to curtail the rights of the heir, upon whom the law would cast the real estate 'immediately upon the death of the ancestor. The estate having thus devolved, and the lessee having failed or neglected to exercise the option to purchase while the lessor was alive, we do not discover upon what satisfactory ground, the real estate should be deemed converted into personalty as of the date of the lease, for the purpose of diverting the purchase money from the heir to the administrator.
The case of Lawes v. Bennett, 1 Cox., 167, is cited by counsel as establishing the doctrine, that conversion may be made to depend upon the option to purchase at a future time, which when exercised after the death of the owner of the estate, will, at any rate as between his real and personal representatives, have a retrospective operation, to the time when the agreement giving the option was entered into. There is no adjudication of this court, in which the doctrine of equitable conversion as applied to optional contracts, with a retrospective operation, is accepted. In Gilbert v. Port, 28 Ohio St., 276, 296, the court recognized the rule, that equity looks upon things agreed to be done as actually done, and when a contract is made for the sale of an estate, considers the vendor as a trustee for the purchaser of the estate sold, and the purchaser as a trustee of the purchase money for the vendor. But the court did not hold, either with or without qualification, that the rule applied “to optional contracts, as well as to -those absolute.” An examination of authorities, English and American, makes manifest that the doctrine of Lawes v. Bennett, does not rest upon a firm foundation.
In Townley v. Bedwell, 14 Ves., 591, Lord Chancellor Erdon says: “ That case, Lawes v. Bennett, was very much argued; and I do not mean to say, that a great deal may not be urged against it.” It was not overruled, however, *358 but was evidently followed as a precedent of impaired authority.
In Collingwood v. Row, 3 Jur. N. S. 785, a lessee of real estate, with an option to purchase at the expiration of a term of years, made the purchase after the death of the lessor. The Vice-Chancellor said: “The only question, then, is, whether this is to be taken as realty or personalty; and I confess I should have felt very great doubts if it were res integra, as very great inconveniences might follow; for after the enjoyment for many years by the devisor, on the expression of an option the realty may be converted into personalty, and not only converted, but the whole may be taken away and given to another. It is a very singular and inconvenient state of things; but if the question has been decided by so great a man as Rord Kenyon,” in Lawes v. Bennett, “whatever doubts I might entertain as to that decision, I am bound to follow it.”
In Edwards v. West, supra, Fry, J., in speaking of the same decision, said: “Whether it is or is not consistent with the general principle upon which conversion has been held to exist, it is not for me to say. It is enough for me to sa}’' that the case has been followed in numerous other cases, though it has been observed upon by more than one judge as somewhat difficult of explanation. * * I do not think I am at liberty to extend it, so as to imply that there is conversion from the date of the contract giving the option, as between the vendor and the purchaser who claim under it.”
In Lawes v. Bennett, there was a lease for seven 3’ears from October, 1758, with a privilege of purchase at any time after September, 1761, and before Septemper, 1765; in Townley v. Bedwell, the lease had been executed in 1795, for thirty-three years, with the privilege of purchase within six years; in Collingwood v. Row, there was a lease of the premises for the term of fourteen years, with the choice of purchasing at the end of the term; in Edwards v. West, there was a demise of the premises for twent3>--one years, with the option to purchase before the expiration of five years. In these and similar cases, where the conversion *359 awaits an expression of the option, there exists the difficulty, that it is left to the election of the lessee whether the demised premises shall be real or personal property. There is, however, the probability, that a tenant who has made improvements on the premises, may, in view of avoiding loss, take advantage of an option to purchase within the prescribed term of a few years, and thus settle the character of the property while the lessor is alive.
But, in the case at bar, there is a perpetual lease with a perpetual right to purchase. According to the contention of the plaintiff in error, the option may be declared at any time in the future, and the fund be paid to the administrator. In Graves v. Graves, 15 Ir., Ch. 357, the Master of the Rolls, referring to Lawes v. Bennett, and Townley v. Bedwell, says: “ In one of those cases the option was to be exercised within six years, and in the other within seven years, which is very different from an option to be exercised at the end of any number of centuries.” If after the death of the lessor, and the lapse of over thirty-five years, under the perpetual lease in controversy, the option of purchase may be declared, and the fund paid to the administrator instead of the heir, for the same reason it may be done at the end of a hundred or more years, when, in the natural, course of things, it would be impossible to find a personal representative of the lessor, or to ascertain who might be the distributees. Nor can we think that the lessor—Mrs. Townsend —having executed the lease for ninety-nine years, renewable forever, intended, that after her son had inherited the land and enjoyed the rents for a series of years, the lessee, upon exercising his option of purchase, might retrospectively convert the real estate into personalty, so that the purchase-money would go to her personal representatives instead of her son and heir.
To what extent a conversion takes place, and to whom the proceeds should go, when land is converted into money, must be determined by looking to the contract or instrument as indicating the intention of parties. Thus, where a will contains a specific devise by name of property, subject to the option, it has been held to carry to the devisee the *360 purchase money also when the option is exercised. Drant v. Vause, 1 Y. & C., 580; Emuss v. Smith, 2 De. G. & Sm., 722. So also, when, in the instrument by which the option is given, there is a direction that the purchase-money is to be paid to the person who is the owner of the estate when the option is exercised, he alone will be entitled to it. Graves v. Graves, supra, 369, 370.
The contract of lease, in the case before us, provided expressly for the payment of the purchase money and all accrued rents to the party of the first part, “her heirs or assigns;” and it is covenanted, that “her heirs or assigns” shall and will convey and assure the inheritance or fee-simple of the demised premises. These provisions in the lease might ordinarily be deemed “too slight to act upon,” as said by the Vice-Chancellor in Weeding v. Weeding, 1 Johns. & H. 432; but, when we consider the duration of the lease, running “for, during and to the full end and term of ninety-nine years, fully to be completed and ended, and renewable forever,” and the further fact, that by operation of law, which the lessor is presumed to have known, the rents and profits would go to her son until the option to purchase should be exercised, we 'are not prepared to say that the lessor did not have in mind the benefit to be derived by her sou, if he survived her, and the option to purchase should not be exercised in her lifetime.
Upon payment of the purchase money and accrued rents by the lessee, as no claim is made upon the fund to satisfy debts of the lessor, there would be no need of the circuitous process of pajdng the money and rents to the personal representative of the lessor, that he might, in turn, pay over the same to the heirs. The parties all being before the court, it was right, therefore, that the fund should be ordered paid directly to the heirs-at-law of Edward W. Townsend.

Judgment affirmed.